UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>    v.<br><br>CARLOS MICHEL-DIAZ,<br><br>           Defendant. | No. CR-12-2014-FVS<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS |

**THIS MATTER** came before the Court on April 17, 2012, based upon the defendant's motion to dismiss the Indictment. He was represented by Alison K. Guernsey. The government was represented by James A. Goeke. For the reasons set forth below, the motion is denied.

**BACKGROUND**

The defendant is a citizen of Mexico. He does not have permission from the Attorney General of the United States to be in this country. The defendant has been convicted of committing crimes in the United States. The most important conviction, for purposes of the instant action, occurred during 1994 in the State of California. On June 27, 1994, he was charged with the crime of Grand Theft Auto. At the time, he was using the alias "Hugo Diaz Lopez." Count 1 of Information stated in pertinent part, "On or about May 27, 1994, . . . Hugo Diaz Lopez . . . in violation of Section 487h(a) of the [California] Penal Code (Grand Theft Auto), . . . did willfully and unlawfully steal, take, carry, and drive away an automobile, to Wit:

Order - 1

a 1986 GMC . . ., the personal property of Marta Wilson."
(Information at 1 (ECF No. 50-1)).  The defendant pleaded guilty on
August 8, 1994.  In doing so, he admitted the following facts:

> On 5-27-94, in Orange County, I drove away a 1986 GMC, . . ., with intent to steal.  On this date, I also evaded a police officer while driving this car.  I was previously convicted of auto theft on 2-9-93.

(Guilty Plea in the Superior Court at 2 (ECF No. 54-1)).

During 1998, a representative of the former Immigration and Naturalization Service served the defendant with a Notice to Appear ("NTA").  The NTA required him to appear before an Immigration Judge ("IJ") and explain why he should not be removed from the United States.  The defendant appeared before an IJ on August 4, 1998.  The IJ determined the 1994 conviction constituted an aggravated felony; rendering the defendant ineligible for voluntary departure from this country.  The defendant was deported to Mexico on September 2, 1998.

Thereafter, the defendant returned illegally to the United States on a number of occasions.  On several of them, the 1998 order was reinstated and he was deported.  Not so in 2006.  On January 26th, a representative of the Department of Homeland Security ("DHS") served him in the Eloy Detention Center with a new NTA.  By way of explanation, "[t]he Eloy Detention Center houses and serves as a transfer point for up to 1,500 alien detainees per day." *United States v. Ramos*, 623 F.3d 672, 677 (9th Cir.2010).  "At Eloy, DHS employs deportation officers who are responsible for assisting DHS's Office of Chief Counsel in obtaining evidence, conducting interviews with detainees, performing criminal history checks, and escorting

detainees who have been ordered removed back to their country of origin." *Id.* It was at Eloy that the defendant was served with a new NTA, and it was at Eloy that a DHS representative met with the defendant on January 26, 2006 in order to discuss removal. According to the defendant, the person read from a form. The defendant says the person "was not a native Spanish speaker." Not only that, but also the defendant says:

> I did not have the form to follow along.
> After this presentation, [the DHS representative] told me that if I signed the form I could be back in Mexico that day. Otherwise, I would have to remain incarcerated until the judge could see me. I don't remember reviewing the form with an individual officer.
> I never talked to an attorney.
> No one ever told me that I could avoid the deportation order.
> I signed the form because I was told it would get me back to Mexico that afternoon, and I didn't want to remain in jail.
> If I knew that I was eligible for voluntary departure, then I would have never waived my right to see the judge. I didn't know I was eligible.

(Defendant's Declaration (ECF No. 46-1) at 3.) As it turned out, the defendant signed the form, which is entitled "Stipulated Request for Removal Order and Waiver of Hearing." The form was subsequently presented to an IJ. The defendant did not appear before the IJ. Instead, the IJ approved the Stipulated Request outside his presence and issued an order of removal. The defendant was removed from the United States on January 26, 2006. He was found in the Eastern District of Washington on December 18, 2011. On February 14, 2012, he

Order - 3

was charged by indictment with being an alien in the United States after deportation. 8 U.S.C. § 1326. He moves to dismiss the indictment. Fed.R.Crim.P. 12(b)(3).

**STANDARD**

The defendant is collaterally challenging two removal orders. One is the 1998 order. The other is the 2006 order. In order to prevail, he must demonstrate "(1) [he] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). Entry of a removal order is "'fundamentally unfair' for purposes of § 1326(d)(3) when the deportation proceeding violated the alien's due process rights and the alien suffered prejudice as a result." *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1043 (9th Cir.2012) (internal punctuation and citations omitted).

**1998 ORDER**

During the 1998 removal proceeding, the IJ told the defendant his 1994 auto theft conviction was an aggravated felony and, thus, he was ineligible for voluntary departure. The IJ was mistaken, says the defendant. He maintains the 1994 auto theft conviction is not an aggravated felony within the meaning of 8 U.S.C. § 1101(a)(43). He insists he was entitled to apply for voluntary departure; which, he says, he arguably could have qualified for. He argues the IJ deprived him of due process by misinforming him. *See Ramos*, 623 F.3d at 681 ("'The requirement that the IJ inform an alien of his or her ability

to apply for relief from removal is mandatory, and failure to so inform the alien of his or her eligibility for relief from removal is a denial of due process that invalidates the underlying deportation proceeding.'" (quoting *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1050 (9th Cir.2004))).

The threshold issue is whether the defendant's 1994 conviction for Grand Theft Auto is a generic theft within the meaning of 8 U.S.C. § 1101(a)(43)(G). Generic theft is 'a taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent.'" *United States v. Velasquez-Bosque*, 601 F.3d 955, 960 (9th Cir.2010) (quoting *United States v. Corona-Sanchez*, 291 F.3d 1201, 1204 (9th Cir.2002) (en banc)). The defendant was convicted of Grand Theft Auto under former California Penal Code § 487h(a). The latter stated in pertinent part, "Every person who feloniously **steals** or takes any motor vehicle . . . is guilty of grand theft." (Emphasis added.) The presence of the word "steals" is potentially significant. Section 490a states, "Wherever any law or statute of this state refers to or mentions larceny, embezzlement, or **stealing**, said law or statute shall hereafter be read and interpreted as if the word 'theft' were substituted therefor." (Emphasis added). The definition of the term "theft" is set forth in § 484(a). *United States v. Corona-Sanchez*, 291 F.3d 1201, 1206-07 (9th Cir.2002) (en banc). "Theft of property under . . . § 484(a) includes 'larceny, embezzlement, larceny by trick, and theft by false pretenses.'" *Carrillo-Jaime v. Holder*, 572

Order - 5

F.3d 747, 751-52 (9th Cir.2009) (quoting *People v. Shannon*, 66 Cal.App.4th 649, 78 Cal.Rptr.2d 177, 179 (1998)).  In other words, there are multiple methods by which a person may commit a theft under § 484(a).  Some are generic thefts within the meaning of § 1101(a)(43)(G); others are not:

> "Larceny, larceny by trick, and embezzlement involve taking another's personal property from the owner's possession, without the owner's consent . . . ." [*People v. Shannon*, 66 Cal.App.4th 649, 78 Cal.Rptr.2d 177, 179 (1998)]. Therefore, a conviction for any of these kinds of theft satisfies the nonconsent element in § 1101(a)(43)(G).

*Carrillo-Jaime*, 572 F.3d at 752 (combining parts of two paragraphs). Theft by false pretenses is different.  It may be accomplished with the owner's consent.  As a result, it does not constitute a generic theft.  *United States v. Rivera*, 658 F.3d 1073, 1077 (9th Cir.2011).

   To summarize, § 484(a) lists multiple methods by which a person may commit theft.  Several methods (*e.g.*, larceny, larceny by trick, and embezzlement) constitute generic theft.  At least one method (theft by false pretenses) does not.  Thus, § 484(a) is a type of divisible statute.  *Cf. United States v. Aguila-Montes de Oca*, 655 F.3d 915, 924 (9th Cir.2011) (en banc) ("A divisible statute contains a list of statutory phrases, at least one of which satisfies an element of a given generic crime.").

   The Ninth Circuit discussed divisible statutes in *Aguila-Montes de Oca*.  In order to focus the discussion, Judge Bybee formulated a hypothetical.  He asked readers to imagine a hypothetical federal recidivism statute that:

   enhances a defendant's sentence if he has been previously

Order - 6

> convicted of the generic offense of "aggravated assault,"
> which has two elements: (1) harmful contact and (2) the use
> of a gun. Imagine further [said Judge Bybee] that a
> defendant has been previously convicted of a state's
> "assault" offense. The state assault offense might be
> categorically broader than generic aggravated assault in one
> of three ways. If the statute is divisible, the state crime
> contains a list of several kinds of weapons, at least one of
> which satisfies the generic crime. Such a crime might have
> the following elements: (1) harmful contact and (2) use of
> a gun or an axe. The state offense might also include a
> "broad element" if it requires (1) harmful contact and (2)
> use of a weapon (which encompasses a broader range of
> conduct than use of a gun). Finally, the state crime of
> conviction might only require harmful contact without
> requiring the use of any kind of weapon at all.

655 F.3d at 926. Judge Bybee went on to explain how the modified categorical approach can be used to analyze a divisible statute:

> When the statute of conviction contains a list of statutory
> phrases, at least one of which satisfies the generic
> statute, the modified categorical approach can be used to
> determine under which statutory phrase the defendant was
> convicted. If the appropriate documents demonstrate that
> the defendant was convicted under the statutory phrase
> satisfying the generic element, then the trier of fact was
> "actually required" to find that element of the generic
> crime. To use our hypothetical, if the statute of
> conviction contains the elements of (1) harmful contact and
> (2) use of a gun or an axe, the modified categorical
> approach can be used to determine whether the trier of fact
> was actually required to find that the defendant used a gun.

655 F.3d at 926-27. Later, Judge Bybee provided an example:

> [I]f the indictment alleges only that the defendant used a
> gun, and the only prosecutorial theory of the case (as
> ascertained exclusively through the relevant *Shepard*

Order - 7

> documents [*Shepard v. United States*, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005)]) is that the defendant used a gun, then we can be confident that if the jury convicted the defendant, the jury found that the defendant used a gun rather than an axe. In such an instance, we would say that, given the facts put forward by the government, the jury was "required" to find that the defendant used a gun. And in the plea context, if the only weapon the defendant admitted to using was a gun, then we can be confident that the trier of fact was "required" to find that the defendant used a gun in the course of assaulting the victim. In other words, the modified categorical approach asks what facts the conviction "necessarily rested" on in light of the theory of the case as revealed in the relevant *Shepard* documents, and whether these facts satisfy the elements of the generic offense.

655 F.3d at 936-37.

Judge Bybee's explanation of the modified categorical approach provides important guidance concerning the defendant's motion to dismiss. As observed above, § 484(a) is a type of divisible statute. It lists multiple methods by which a person may commit theft. The Court assumes, for purposes of argument, the defendant is correct in asserting § 484(a) supplemented former § 487h(a). In other words, a prosecutor could have charged a violation of former § 487h(a) no matter whether the thief obtained the motor vehicle by larceny, larceny by trick, or false pretenses. This Court's task is to determine, if possible, which of the preceding methods the prosecutor charged in 1994.

The Information is the starting point. The prosecutor alleged the defendant "did willfully and unlawfully steal, take, carry, and drive away . . . a 1986 GMC . . . the personal property of Marta

Order - 8

Wilson." The preceding language contains no reference to theft by false pretenses. The absence of any reference to false pretenses is significant. Had the prosecutor intended to rely upon such a theory, it is likely he would have included appropriate language in the Information. The fact the prosecutor did not mention theft by false pretenses indicates he did not intend to rely upon that theory. This conclusion is reinforced by the language the prosecutor did use. He alleged the defendant did "willfully and unlawfully steal, take, carry, and drive away . . . a 1986 GMC[.]" This is the language of common-law larceny; language a prosecutor would use if the defendant obtained Ms. Wilson's car without her consent. By using the language of common-law larceny (but not the language of false pretenses), the prosecutor narrowed the charge to generic limits. *See Rivera*, 658 F.3d at 1077. The narrowing process continued in the defendant's statement on plea of guilty. He said, "I drove away a 1986 GMC, . . ., with intent to steal. On this date, I also evaded a police officer while driving this car. I was previously convicted of auto theft on 2-9-93." Nothing in those three sentences suggests the defendant persuaded Ms. Wilson to transfer title to him through false pretenses.

Perhaps not, responds the defendant's attorney, but the Court cannot exclude the possibility. It's possible he deceived the owner into giving him the vehicle and, once the owner discovered the deceit, she called the police in order to secure the return of her vehicle. Since, according the defendant's attorney, the defendant's statement on plea of guilty does not exclude the possibility, the government has failed to demonstrate, under the modified categorical approach, his

conviction necessarily rested on facts that constitute generic theft. As authority, the defendant's attorney cites one of the holdings in *Aguila-Montes de Oca*.

In order to evaluate this argument, additional background is necessary. Guillermo Aguila-Montes de Oca pled guilty to burglary in California. 655 F.3d at 918, 940. One of the issues the Ninth Circuit had to decide was whether, under the modified categorical approach, he admitted facts that were sufficient to establish he committed a generic burglary. *Id.* at 945-46. Among other things, generic burglary requires proof of "an unlawful or unprivileged entry." *Id.* at 943. California requires proof of an unlawful entry, but the California requirement differs from the generic requirement:

> [T]he main difference . . . is that the generic definition excludes entry into a structure open to the public and entry into a structure that the defendant is licensed or privileged to enter, while the California definition permits conviction in these situations where the defendant entered with the intent to commit a crime and did not have an unconditional possessory right to enter (such as with shoplifting).

655 F.3d at 946. With this difference in mind, the Ninth Circuit turned to the *Shepard* documents that had been submitted by the government. (They did not include a statement of the defendant on plea of guilty. *Id.* at 945.) The most informative of the *Shepard* documents was the Felony Complaint, which alleged:

> On or about January 4, 1988, in the County of Los Angeles, the crime of RESIDENTIAL BURGLARY, in violation of PENAL CODE SECTION 459, a Felony, was committed by GUILLERMO AGUILA, who did willfully and unlawfully enter an inhabited

Order - 10

> dwelling house and trailer coach and inhabited portion of a building occupied by Jacinto Padilla, with the intent to commit larceny and any felony.

655 F.3d at 945. The above-quoted allegations were not enough to demonstrate Mr. Aguila-Montes de Oca pled guilty to generic burglary:

> The words "unlawfully enter" in Aguila's indictment provide us with no indication as to whether Aguila was licensed or privileged to enter Jacinto Padilla's home or whether Padilla's home was open to the public because, under California law, such entries would be unlawful even if Aguila entered the home with Padilla's permission. . . . [B]ecause of California's unusual approach to defining unlawful or unprivileged entry, the Shepard documents do not permit such an inference. Examining only those documents, we could not rule out the possibilities that Aguila was attending a dinner party at Padilla's invitation; that Padilla was hosting an open house which Aguila took advantage of; that Padilla had asked Aguila to house-sit while he was away for vacation; or that Aguila had a key to Padilla's house, and that Padilla had told him he was free to enter at any time unless he was planning to rob the house.
>
>     In short, conviction records for California burglary cannot demonstrate that a defendant was convicted of generic burglary unless they do something more than simply repeat the elements of California burglary. Here, for example, if the Felony Complaint to which Aguila pled guilty stated that Aguila "did willfully and unlawfully enter a private inhabited dwelling house without the owner's consent," the document would have been sufficient to support a finding that Aguila had committed generic burglary. They did not. The documents only reveal that Aguila pled guilty to the bare elements of California burglary. Accordingly, under the modified categorical approach, the documents produced by the government do not demonstrate that Aguila's conviction necessarily rested on facts satisfying the elements of the

Order - 11

generic crime of "burglary of a dwelling."
655 F.3d at 946.

*Aguila-Montes de Oca* is distinguishable from this case. To begin with, the inquiry this Court must make is different. Here, unlike *Aguila-Montes de Oca*, the Court must determine, if possible, which of several types of theft the defendant committed, *e.g.*, whether it was common-law larceny or theft by false pretenses. Not only is the inquiry different, but more information is available to this Court than was available to the Ninth Circuit in *Aguila-Montes de Oca*. Unlike the Ninth Circuit, this Court has both the charging document and the defendant's written statement on plea of guilty. Read together, they demonstrate the defendant pled guilty to larceny rather than to theft by false pretenses. The Information does not allege the defendant employed false pretenses in order to persuade the owner to transfer title to her vehicle to him. The absence of such language indicates the prosecutor was not alleging theft by false pretenses. This is confirmed by the defendant's statement on plea of guilty. The manner in which he describes his conduct is indicative of larceny.

**RULING**

In 1994, the defendant was convicted of Grand Theft Auto under former California Penal Code § 487h(a). The threshold issue is whether his 1994 conviction is a generic theft within the meaning of 8 U.S.C. § 1101(a)(43)(G). "Generic theft is a taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent." *Velasquez-*

*Bosque*, 601 F.3d at 960 (internal citation and punctuation omitted). Only one element of the generic definition is in dispute; namely, whether the defendant took the owner's car without her consent. The government has submitted both the charging document and the defendant's statement upon plea of guilty. The defendant argues they are insufficient to demonstrate he committed a generic theft. As he points out, neither document expressly states he took the owner's vehicle without her consent. Absent such a statement, says the defendant, the Court cannot exclude the possibility he committed theft by false pretenses. His argument is unpersuasive. The Court assumes, without deciding, that former § 487h(a) included every type of theft listed in § 484(a). One of them is theft by false pretenses. The charging document does not mention this method. To the contrary, the Information alleged the defendant "did willfully and unlawfully steal, take, carry, and drive away . . . a 1986 GMC . . ., the personal property of Marta Wilson." That is the language of larceny, not theft by false pretenses. The defendant's statement on plea of guilty is consistent with this interpretation of the charging document. He admitted, "I drove away a 1986 GMC, . . ., with intent to steal. . . . I also evaded a police officer while driving this car." Read together, the charging document and the defendant's statement upon plea of guilty narrowed the charge to generic limits. Thus, the defendant's 1994 Grand Theft Auto conviction necessarily rests upon facts that are sufficient to establish a generic theft. That being the case, his 1994 Grand Theft Auto conviction constitutes an aggravated felony. The Immigration Judge before whom the defendant

Order - 13

appeared on August 4, 1998, did not err in so advising him.  The defendant was not deprived of due process that day.  The 1998 removal order is valid.  As a result, it is unnecessary to resolve the defendant's remaining contentions.  His motion to dismiss will be denied.

**IT IS HEREBY ORDERED:**

1. The defendant's motion to dismiss the Indictment (**ECF No. 45**) is **denied**.

2. One week prior to trial, the parties shall file proposed voir dire, proposed jury instructions, witness lists and trial memoranda.

**IT IS SO ORDERED.**  The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

**DATED** this   23rd   day of April, 2012.

                              s/Fred Van Sickle
                              Fred Van Sickle
                     Senior United States District Judge